Law Office of James McGee, PLC
Steven Parnell Weaver
CA Bar #243000
325 W. Hospitality Lane, Suite 212
San Bernardino CA 92408
steven@mcgeeplc.com
909-571-5599

## UNITED STATES CENTRAL DISTRICT COURT

## STATE OF CALIFORNIA

| | |
|---|---|
| June Mayfield aka Deshawn Williams,<br><br>          Plaintiff<br><br>vs.<br><br>County of San Bernardino, County of San Bernardino Sheriff Does 1-5,<br><br>          Defendants | Case No.:<br>COMPLAINT FOR DAMAGES<br>- **42 U.S.C. Section 1983 and 1988:**<br>  State Created Danger;<br>  Failure to Protect;<br>- **Monell:**<br>- Custom/Practice/Policy; Failure to Train;<br>- State Law Claims: Negligence; Intentional Infliction of Emotional Distress;<br>-<br><br>DEMAND FOR JURY TRIAL |

## **NATURE OF ACTION**

1. This is an action for money damages brought pursuant to 42 U.S.C. Sections 1983 and 1988, the Eighth and the Fourteenth Amendments of the United States Constitution and the California Constitution against the

County of San Bernardino (DCSB), San Bernardino County Sheriff Does 1-5 (DOES).  DCSB and DOES collectively together will be referred to as DEFENDANTS.  Individual Defendant will be referred to as Doe 1.

## **PRELIMINARY STATEMENTS**

2. Plaintiff June Mayfield aka Deshawn Williams (PJM) was a pretrial inmate at the West Valley detention facility in the County of San Bernardino.

3. PJM was injured due to the DEFENDANTS' failure to provide safety and failing to stop harm that they reasonably knew was going to occur.

4.  DEFENDANTS have sole control over the opening and shutting of security doors.

5. DEFENDANTS facilitate and contribute to repeated attacks by inmates against inmates by their control over the security doors.

6. This custom/policy/practice (CPP) of opening and/or not securing security doors causes insecurity amongst the inmates, including PJM, and this CPP results in inmates being physically harmed.

7. These CPPs run contrary to the duty of care a jailer owes to the prisoner and the special relationship that exists between them.

8. This is a civil action seeking damages against the DEFENDANTS for committing acts under color of law and depriving PJM of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983). The rights deprived are 1.) due process right to be free from violence from other inmates and 2.) constitutional right to be free from a government employee affirmatively placing PJM in a position of actual, particularized danger.

9. DEFENDANTS together acted with a deliberate indifference to a known and obvious danger.

10.    PJM brings this action against all the DEFENDANTS under the Eighth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries suffered due to the DEFENDANTS' substantial and deliberate indifference to their health and safety.

11.    PJM brings this action against the DEFENDANTS, for monetary damages to redress all their individual injuries resulting from DEFENDANTS' negligence, deliberate indifference, failure to protect and purposeful acts.

12.   PJM states claims against the DEFENDANTS for breach of duties imposed upon them by the Constitution of the State of California and for duties imposed upon them by the common law.

13. Due to the number of current pending lawsuits against the DCSB involving harm to inmates by other inmates and the failure to protect, which has continuing unabated, DEFENDANTS have constructive and actual notice of the longstanding, pervasive, well-documented custom, habit, and practice of allowing inmate-on-inmate violence, facilitating it, and showing a deliberate indifference toward a substantial risk of harm to PJM.

14. The following similar cases are examples of DCSB's custom and unwritten policy facilitating inmate on inmate violence in its jails and provide notice of the problems:

    a.   Solis v. West Valley 5:15-1005 – filed 5/21/2015 – inmate alleged request made for protective custody, request denied, and inmate placed in general population whereupon he was beat up by 3 inmates on 2 separate occasions and later put into protective custody.  Pro se dismissed for procedural reasons.

    b.   Thomas v. County of San Bernardino 5:15-cv-02323 – filed 11/11/2015 - 18-year-old 100-pound inmate who was

developmentally and physically disabled was placed in a 2-man
cell at West Valley and killed by a 22-year-old 200-pound man with
known violent propensities and prior assaults with inmates and
staff while in custody.

c. <u>Clay v. San Bernardino</u> – No. EDCV 19-00032-AG(DFM) –
originally filed 6/2/2016 - security door opened allowing Clay to be
attacked and stabbed by other inmates while Sheriff Deputies
watched and failed to intervene.

d. <u>Thomas v. County of San Bernardino</u> 5:19-cv-00167 – filed
1/28/2019 – Deputies purposefully put an inmate who plaintiff was
testifying against in a cell with him, knowing he would be attacked,
whereby he was in fact sliced with a weapon in his abdomen area,
broke his wrist, busted his lip and deputies failed to stop the attack
and watched.  The District Attorney had even warned the Sheriff's
department to not allow the two inmates, "any room together,
holding cell, county bus, transportation to and from court, for safety
and security of the plaintiff." Sheriff Department deemed the event
an accident during the grievance process.

e. <u>McGhee vs. San Bernardino County</u> 5:19-cv-00910-VBF-JC, - filed
5/15/2019 - inmate attacked by weapon received stiches and

5

bandages and alleged a long-standing practice of allowing prisoners to roam freely and to attack other prisoners. Pro se case dismissed on procedural grounds.

f.  Bookman v. San Bernardino, EDCV 19-cv-1012 JGB (KKx) – filed 6/3/2019 - inmate stabbed by another prisoner while in protective custody and alleged pattern and practice of letting prisoners roam freely unsupervised despite information regarding threats. Guards were warned about possible attack by Plaintiff. Pro se dismissed on procedural grounds because no Monell claim filed although Court found enough pled for failure to protect.

g.  Martinez v. County of San Bernardino 5:19-cv-2057 – filed 10/25/2019 - inmates allege that deputies encouraged inmates to fight in an involuntary fight club and deputies would intimidate and scare inmates into fighting. These deputies were later charged and convicted. Settled.

h.  Covarrubias v. SCS Trujillo, EDCV 20-1456-JFW (JPR) – filed 7/1/2020 - inmate at West Valley placed by Sheriff Deputies on three separate occasions into a room with rival enemies or Deputies opened his cell door whereafter the inmate was injured. Pro se dismissed on legal sufficiency grounds.

6

i. <u>Estate of Michael McCormack v. County of San Bernardino</u>, 5:21-cv-00148- filed 1/25/2021 - wrongly housed mentally ill inmate at West Valley killed by violent inmate with previous known violent in-custody disputes.  Monell dropped as not adequately pled.

j. <u>Manago v. Martinez</u> – No. 5:21-CV-01939 MCS(KES) – filed 11/10/2021 - Manago alleges mixing of different classifications of inmates contrary to jail policy to encourage inmate on inmate violence.

k. <u>Townsend v. Deputies</u> No. EDCU 22-0525-VBF (JPR) – filed 3/24/2022 - security door opened allowing Townsend to be attacked by inmates while in protective custody.

l. <u>Pedro Hernandez vs. San Bernardino County</u>, 5:22-cv-01101-JGB-SP – filed 7/1/2022 - inmate at West Valley was injured with broken vertebrae during a second race riot that was preventable as the Sheriffs didn't separate the races after the first race riot.

m. <u>Mateo D. v. County of San Bernardino</u>, 5:22-cv-1357 – filed 8/1/22 - wrongly housed severely mentally ill inmate at West Valley killed when placed in a 2-man cell with a violent inmate with prior history of violence in custody.  Dismissed with leave to amend Monell failings.

n. <u>Villa v. County of San Bernardino</u>- 5:22-cv-01538-DSF-JC – filed 8/31/2022- Plaintiffs Villa and Morales were stabbed by an inmate and the DCSB failed to intervene though they could have, failed to protect and they created this danger by facilitating and allowing these actions.

o. <u>Alvarado v</u>. County of San Bernardino - <u>2:23-cv-02641</u> – filed 4/7/2023 - whereby protected inmates were stabbed and attacked by general population inmates because the DCSB facilitated access and physical and emotional harm happened thereafter.  In these incidents this DCSB and employees failed to intervene and that case is associated with this case per Order of the Court.

p. <u>Baltierra v. County of San Bernardino</u> – 5:23-cv-00931-DSF-JC – filed 5/23/2023 – whereby inmates were attacked when other inmates where allowed into the tier, that should not have been there, and the deputies purposefully initially failed to monitor what was going on to allow the attack to unfold.

q. <u>Perris Lee v. County of San Bernardino</u> – 5:23-cv-02446-SHK an inmate was able to attack inmate Lee after a guard opened a door, granting access.

8

15.   Hector Gaona in the <u>Alvarado</u> case gave prior actual notice of threats to his safety when he was previously attacked while in protected custody by inmates that should have been segregated from him and by filing a grievance thereafter. He was attacked a second time by inmates who should not have had access to him.

16.   Each Government-official Defendant's, official, and individual actions, has violated the Constitution.

17.   The alleged constitutional deprivations are the product of a policy or custom of San Bernardino County of putting inmates in purposeful, preventable danger without any consequences.

18.   DEFENDANTS are aware of the need to keep certain categories of inmates separated.

19.   There is a permanent and well-settled practice by San Bernardino County in not protecting inmates which gave rise to the alleged constitutional violations.

20.   DEFEEDNANTS have been aware and are aware the inmates have the ability to pop doors themselves or cause security doors not close.

21.   DEFENDANTS know of the need to manually check doors to ensure their security.

22.  DEFENDANTS have a habit, custom and thereby policy of housing, placing, or combining inmates, that should be separated and segregated from each other, together in the same cell, area or allowing unauthorized access.  The death or great bodily injury of one by the other happens thereafter and this custom presents a substantial known risk of serious harm.  DEFENDANTS consistently fail to take reasonable measures to abate this harm, which allows inmate on inmate violence to occur again and again and again.

23.  DCSB's officials, management and employees were intentional, by, without limiting other acts and behaviors: failing to follow its established safety procedures; failing to protect PJM from harm from other inmates; failing to provide necessary and appropriate security measures and maintenance in keeping security doors closed to prevent access for the safety, welfare and protection of PJM; failing to monitor the cameras in the control booth, ignoring them on purpose, and/or watching and failing to act.

24.  The DEFENDANTS violated PJM's constitutional rights and were negligent or intentional by, without limiting other acts and behaviors; breach of its duty of care PJM by: (1) not monitoring inmates and not following established protocols for doing such; (2) failing to properly

keep inmates segregated that are known to have acted violently in the past; (3) failing to provide sufficient gate maintenance at the unit where PJM is housed; (4) failing to follow its established safety procedures in keeping racially segregated inmates away from each other; (5) failing to provide necessary and appropriate security measures in stopping inmate on inmate attacks; (6) failing to implement a classification system and corresponding housing plan for inmates at the West Valley detention center to keep inmates separated and, (7) failing to provide necessary and appropriate security measures necessary for the safety, welfare and protection of PJM.

25.  PJM suffered physical and emotional injuries and deprivation of his constitutional rights because of the DEFENDANTS' actions.

26.  PJM was further disciplined after being attacked due to the DEFENDANTS actions.

27. PJM is entitled to reasonable costs and attorney's fees under 42 U.S.C. 1988.

28. Under San Bernardino County policy for door security 6.505.00, inmates are unable to leave one secured area to enter another without a staff member opening a door.  Security doors shall remain closed unless authorized personnel are passing through.  Staff shall take precautions

to ensure all persons are clear for movement prior to opening or closing doors and gates.  Staff shall not open any door until the person requesting entry or exit has been identified.

29. San Bernardino County policy for door security 6.505.00 was not adhered to, resulting in injury to PJM.

30. Under San Bernardino County policy for inmate grievances 12.230.00 an administrative or criminal investigation is not completed if there is misconduct by a staff Member of the jail if a Facility Commander or designee is notified of such an event unless for an allegation of sexual abuse and harassment.

31. San Bernardino County policy 12.230.00 shows that the Defendant shows substantial indifference to the known and obvious danger of facilitating inmate on inmate violence by not criminally or administratively investigating such occurrences.

32. Exposing an inmate to attack by another inmate shows that DEFENDANTS are in fact deliberately indifferent to the risk of harm to the inmate, in this case, PJM.

33. The harm PJM was in danger of suffering was objectively serious; The harm was in fact serious resulting in being attacked and severe emotional distress.

34. DOES 1- 5 were acting within the scope of his employment when he facilitated and/or allowed PJM to be attacked by other inmates.

## JURISDICTION AND VENUE

35. This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343 under the federal question doctrine. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

36. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

37. This action is filed under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, under California Law and under common law, to redress injuries suffered by PJM at the hands of DEFENDANTS.

38. DEFENDANTS are responsible for the opening, closing, security and maintenance of the gates and units in question.

## PARTIES

39.   Defendant San Bernardino County is a California municipal corporation that acts through individuals to establish its policies and that is capable of being sued under California Law.

40.   DCSB is an entity under the jurisdiction of San Bernardino County.

13

41.     At all times mentioned herein and at all other relevant times, DOES 1-5 were employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

42.     PJM is an individual, and at all times mentioned herein was a citizen of the United States of America and a resident of the County of San Bernardino while incarcerated at San Bernardino County West Valley Detention Center located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.

**STATEMENT OF FACTS GIVING RISE TO PJM's CAUSES OF ACTION**

43.     The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

44.     At the time of the incident, PJM was incarcerated at San Bernardino County West Valley jail located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.

45.     On July 8, 2023, at approximately 7:12 AM, inmates Luis Martinez, Manuel Guiterrewz and Steven Lagunas were able to "pop" their cell doors from their bottom tier and together beat, attack and stab PJM.

14

46. PJM was stabbed multiple times due to the incident, causing him to be sent to the hospital.

47. PJM was further disciplined for 20 days after being attacked.

48. The inmate discipline report against PJM states that Deputy N. Perez J4517 saw the incident from while sitting down in Unit 5's bubble.

49. N. Perez does not mention PJM's stabbing in the discipline report.

50. N. Perez does not report how the inmates were able to "pop" their doors in his discipline report.

51. Inmates should not be able to open their jail cell doors themselves.

52. DEFENDANTS owed PJM a duty under the law to protect him from harm as his jailer.

53. PJM was attacked because a door was purposely or negligently not secured by DOES.

54. PJM was placed in protective custody after the attack, which heightened his fear of being attacked further.  This caused a constant fear of his security, increased anxiety and paranoia.


**COUNT 1 –Violation of 14th Amendment – Due Process – State-Created Danger**

55.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as

if set forth herein and further states that:

56.   DOES breached its duty of care to Plaintiff through "deliberate

indifference" toward a substantial risk to the Plaintiff's health or safety by

failing to secure security doors.  These acts were a known and obvious

danger of not providing the proper maintenance to control the opening or

closing of a security door in a high security unit.

57.   DOES committed an affirmative act by not ensuring thee security

doors were secure.

58.   By DOES allowing the door to be opened, or by failing to close the

appropriates doors, that inaction or action placed Plaintiff in a position of

an actual, particularized danger by creating and exposing the Plaintiff to

a danger that he would not have otherwise faced.

59.   DOES acted with deliberate indifference to a known and obvious

danger by allowing it to be opened without their control, and then by

failing to take any action to timely protect PJM from attacking inmates;

DOES control the opening and closing of the security doors and DOES

were late to intervene to stop the attack.

60.   DOES' failure to take appropriate action and their purposeful

affirmative action not controlling the door, created the actual,

16

particularized dangers which caused injury to the Plaintiff that was foreseeable and in fact resulted in physical and emotional harm to the Plaintiff.

61.    The DEFENDANTS' common practice of placing inmates needlessly in detrimental situations caused the Plaintiff to be attacked and thereby caused his emotional and physical injuries and DOES are thereby liable for compensatory damages under 42 U.S.C. Section 1983.

62.    Plaintiff further claim all of Plaintiff's attorney's fees and costs incurred and to be incurred in Plaintiff's presenting, maintaining, and prosecuting this action under 42 U.S.C, 1988.

63.    The action of the Defendants are/were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.


**COUNT 2 – Violation of 14th Amendment – Pretrial Detainee's Claim of Failure to Protect**

64.    The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

17

65.   DOES deprived the Plaintiff of particular rights under the Fourteenth Amendment by a purposeful failure to provide necessary and appropriate security measures in keeping security doors secure and failing to attempt to stop an attack by an inmate.

66.   DOES made an intentional decision regarding the conditions under which the Plaintiff was confined by not controlling the opening of a door of an inmate who thereafter attacked PJM.

67.   The opening of a security door housing a high security inmate of a different race put PJM at substantial risk of suffering serious physical and emotional harm, which in fact did occur.

68.   DOES did not take any reasonable available measures to abate or reduce that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved in not maintaining control of the security doors and in ignoring attacks— making the consequences of the defendant's conduct obvious; and

69.   By not taking the measures to abate or reduce the risk, DOES caused the Plaintiff's injuries.

70.   The injury to the Plaintiff was caused by a failure of DOES to provide necessary and appropriate security for the safety, welfare, and protection of Plaintiff in violation of the laws of the Constitution and

18

procedures governing the operation of DOES by allowing security doors

to be unsecured, not segregating inmates sufficiently and/or allowing

high security inmates to roam unsecured causing the injury to PJM.

71.   The Plaintiff re-alleges and incorporates paragraphs  60-63 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 3 – 1983 MONELL: MUNICIPALITY LIABILITY FOR CUSTOM/PRACTICE/POLICY; FAILURE TO TRAIN

### (PJM vs. DCSB)

72.   PJM re-alleges and incorporates the foregoing paragraphs as if set

forth herein and further states that:

73.   PJM was deprived of constitutional rights – namely a.) due process

right to be free from violence from other inmates and b.) constitutional

right to be free from government employees affirmatively placing PJM in

a position of actual, particularized danger and/or not doing anything to

stop inmate-on-inmate violence when being in a position to stop it or

failing to intervene; DEFENDANTS deprived PJM of these constitutional

rights in this matter.

19

74.    DCSB and its employees have a custom of allowing, facilitating,

encouraging, and failing to defend against inmate-on-inmate violence as

alleged in this Complaint and Paragraphs 7, subsections a-q and 8;

Each case cited involves placing inmates in a position of peril and/or

Defendants failing to protect inmates from other inmates and/or being

the in-fact cause of inmate-on-inmate violence.  PJM alleges

DEFENDANTS allowed, facilitated, encouraged and/or failed to defend

or intervene against the attacks against PJM in this matter.

75.    DCSB's policy/custom regarding inmate-on-inmate violence amounts

to deliberate indifference to the plaintiff's constitutional right by turning a

blind eye to inmate-on-inmate violence, facilitating it, encouraging it,

watching it and not stopping it from happening or slowly reacting to it on

a regular basis as alleged in this Complaint and Paragraphs 7,

subsections a-q and 8; DEFENDANTS showed deliberate indifference to

the PLAINTIFF constitutional rights by facilitating the attacks in this

matter as alleged.

76.    DCSB's custom/policy regarding inmate-on-inmate violence, as

alleged in this Complaint and Paragraphs 7, subsections a-q and 8, was

the moving force behind the constitutional violation because PJM would

not have been injured or attacked but for the DCSB's continuing actions;

20

PJM was injured and attacked because of the actions of the DEFENDANTS in allowing prisoners to free roam unsecured and consistently allowing access for inmates to attack other inmates.

77.    DCSB's current custom/policy regarding inmate-on-inmate violence is untenable, unconstitutional, and illegal and represents the opposite of the duty imposed on municipalities to reasonably protect those in its custody.

78.    DOES acted under color of state law.

79.    DCSB's custom/policy regarding inmate-on-inmate violence as alleged in this Complaint and Paragraphs 14, subsections a-p and 15 have been so consistent and widespread that it should be considered a permanent and well-settled policy because the DCSB and their employees keep repeating the pled actions and will not stop without intervention.

80.    DCSB's custom/practice/policy of pitting inmates against each other and failing to protect inmates is of a sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy.

81.    DCSB has consistently failed to train its deputies on stopping inmate violence before it happens and when they know or should know it is

going to occur. The training policies of the DCSB's were not adequate to prevent violations of law by its employees as they have a duty to protect inmates from violence nor was there adequate training to handle the usual and recurring situations with which they must deal.

82.    DCSB was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of the law by its employees in protecting inmates.

83.    DCSB was deliberately indifferent to the known or obvious consequences of its failure to train its employees adequately.

84.    DCSB's failure to prevent violations of law by its employees in not protecting inmates from violence and the failure to provide adequate training caused the deprivation of the plaintiff's rights by DOES.

85.     DCSB's failure to prevent law violations and to train played a substantial part in bringing about or causing the injury or damage to PJM.

86.    These policies, customs, practices and failure to train were the moving force and the reason behind DOES's violations in PJM' constitutional rights.

87.    Considering the duties assigned to DOES, the need for more or different training is so obvious, and the inadequacy so likely to result in

the violation of constitutional rights, that the policymakers of the DCSB

can reasonably be said to have been deliberately indifferent to the

constitutional rights of PJM.

88.   In addition to the series of similar events, the conduct alleged within

this complaint falls within the narrow range of circumstances that makes

a particular showing of obviousness.  Allowing inmates access to other

inmates for an unlawful purpose is against department policy.

89.   PJM re-alleges and incorporates paragraphs 60-63 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 4 – Negligence

90.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as

if set forth herein and further states that:

91.   DEFENDANTS breached its duty of care to the Plaintiff by allowing

an inmate under the care and custody of the San Bernardino Sheriff's

Department to attack PJM and by failing to protect PJM by failing to

timely intervene.

92.   DEFENDANTS breached its duty of care to the Plaintiffs by failing to

follow its established safety procedures resulting in PJM being attacked.

23

93.     Due to the actions of a San Bernardino Sheriff's Deputy, doors were not properly maintained, operated and/or secured;

94.     DEFENDANTS' officials, management and employees violated plaintiff's constitutional rights and were negligent by, without limiting other acts and behaviors: breach of its duty of care to Plaintiffs by negligently: (1) allowing prisoners access to weapons; (2) failing properly to screen and segregate inmates known to have acted violently in the past; (3) failing to follow its established safety procedures; (4) failing to provide necessary and appropriate security measures by negligently or purposefully leaving security doors unsecured; (5) failing to develop and implement a classification system and corresponding housing plan for inmates at the detention facility; (6) failing to either use technology to observe attacks or choosing to not stop the attack.

95.     Due to the doors being unsecured, PJM was attacked and sustained preventable physical, psychological, and emotional damage.

96.     The Plaintiff re-alleges and incorporates paragraphs 60-63 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

### **COUNT 5- Emotional Distress**

24

97.   The Plaintiffs re-alleges and incorporates the foregoing paragraphs

as if set forth herein and further states that:

98.   DEFENDANTS engaged in outrageous conduct with an intent to or a

reckless disregard of the probability of causing PJM to suffer emotional

distress by facilitating an inmate-on-inmate attack by not securing doors

which allows inmates' access to attack.

99.   As a direct, proximate, and foreseeable result, PJM suffered severe

emotional distress from physical and emotional trauma induced by

DEFENDANTS and the outrageous conduct was the cause of the

emotional distress suffered.

100.  The actions of the DEFENDANTS that caused the injury did so either

purposefully or negligently.

The Plaintiff re-alleges and incorporates paragraphs  60-63 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein this

Count.

101.  Attorney's Fees are requested on All Counts as the Prevailing Party.

//

WHEREFORE, the PLAINTIFF demands judgment against each and every

Defendant individually and jointly as DEFENDANTS and prays for relief as

follows as to each above Count or Charge:

1.) Compensatory damages in an amount according to proof, which is fair, just, and reasonable.

2.) Punitive and exemplary damages under federal and California law, in an amount according to proof and in an amount which is fair, just, and reasonable against DOES as allowable by law.

3.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C 1983 and 1988.

4.) For such other and further relief as the Court deems just and proper.

Dated: March 6, 2024

Steven Parnell Weaver

Attorney for PLAINTIFF

DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a jury trial on each and every charge or count.

Dated: March 6, 2024

Steven Parnell Weaver

Attorney for PLAINTIFF

26